United States District Court
Western District of Texas
Midland/ Odessa Division

Ryan Smart

v.                                                    No. 7:20-cv-266

Ranger Energy Services, LLC
and Mallard Completions, LLC

## Original Complaint

Plaintiff, Ryan Smart, files this Original Complaint against Mallard Completions, LLC ("**Mallard**") and Ranger Energy Services, LLC ("**Ranger**") (collectively "**Defendants**"), and pleads as follows:

### Summary

1. This is a civil action brought by Plaintiff pursuant to the federal Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the federal Portal-to-Portal Pay Act, 29 U.S.C. §§ 251-262, (collectively "**FLSA**") for Defendants' misclassification of Plaintiff, a wireline operator, as exempt from the overtime requirements of the FLSA and their resulting failure to pay him time and one-half his regular rate of pay for all hours worked over 40 during each seven-day workweek from approximately May of 2018 through October 10, 2020.

2. In addition, Plaintiff seeks to hold Mallard and Ranger jointly and severally liable as "employers," as defined by 29 U.S.C. § 203(d).

3. Plaintiff seeks all damages available under the FLSA, including back wages, liquidated damages, legal fees, costs, and post-judgment interest.

## Parties

### A. Plaintiff Ryan Smart

4. Plaintiff, Ryan Smart, is an individual resident of Tarrant County, Texas and a current employee of Defendants.

5. Plaintiff has worked as a wireline operator for Defendants from on or about April 20, 2018 to on or about November 30, 2019, and then from on or about December 30, 2019 to present. He was paid a salary up until approximately October 10, 2020, when he was switched to hourly. Defendants classified Plaintiff's position, prior to October 10, 2020 as exempt from the overtime requirements of the FLSA and did not pay him overtime for hours worked in excess of 40 in a given seven-day workweek. Plaintiff typically worked between 16 to 19 hours (or more) each workday and between 112 to 133 hours (or more) each

seven-day workweek. In addition, during his first term of employment, Plaintiff received a 1% service ticket bonus tied to successfully completing servicing revenue. Beginning in December of 2019, when Plaintiff was re-hired, he received a 2.0% service ticket bonus tied to successfully completing servicing revenue. Lastly, according to his offer of employment, Plaintiff was to receive paid-time-off, despite his being a salaried employee.

6. Pursuant to 29 U.S.C.A. § 216(b), Plaintiff files his consent to be a party plaintiff herewith.

### B. Defendant Mallard Completions, LLC

7. Mallard Completions, LLC is a Delaware limited liability company registered to do business in the State of Texas, with its principal office at 800 Gessner, Ste. 1000, Houston, Texas 77024.

8. Mallard's governing person is Ranger, whose principal office is also at 800 Gessner, Ste. 1000, Houston, Texas 77024.

9. During all relevant times to this lawsuit, Mallard did business in the State of Texas.

10. Mallard maintains multiple yards in Texas from which it offers pressure pumping and wireline services to the oilfield industry.

11. At all times relevant to this lawsuit, Mallard has been an "enterprise engaged in commerce" as defined by Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

12. At all times relevant to this lawsuit, Mallard employed, and continues to employ, two or more employees who engaged in commerce and/or who handled, sold or otherwise worked on goods or materials that have been moved in or produced for commerce by any person, within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

13. Furthermore, Mallard employed two or more employees who regularly handled, sold or otherwise worked on goods and/or materials in their daily work that were moved in and/or produced for commerce.

14. At all times relevant to this lawsuit, Mallard has had annual gross sales or business volume in excess of $500,000.

15. Mallard may be served via its registered agent, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

### C. Defendant Ranger Energy Services, LLC

16. Ranger Energy Services, LLC is a Delaware limited liability company registered to do business in the State of Texas, with its principal office at 800 Gessner, Ste. 1000, Houston, Texas 77024.

17. During all relevant times to this lawsuit, Ranger did business in the State of Texas, providing products and services in the oil and gas industry throughout the United States.

18. At all times relevant to this lawsuit, Ranger has been an "enterprise engaged in commerce" as defined by Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

19. At all times relevant to this lawsuit, Ranger employed, and continues to employ, two or more employees who engaged in commerce and/or who handled, sold or otherwise worked on goods or materials that have been moved in or produced for commerce by any person, within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

20. Furthermore, Ranger employed, and continues to employ, two or more employees who regularly handled, sold or otherwise worked on goods and/or materials in their daily work that were moved in and/or produced for commerce.

21. At all times relevant to this lawsuit, Ranger has had annual gross sales or business volume in excess of $500,000.

22. Ranger may be served via its registered agent, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

23. Hereinafter, Mallard and Ranger will collectively be referred to as "**Defendants**". Defendants are joint employers pursuant to 29 C.F.R. § 791.2. Because of Defendants' joint operating control over Plaintiff, Defendants are responsible, jointly and severally, for compliance with all of the applicable provisions of the FLSA, including overtime provisions, with respect to the entire employment for the workweeks at issue in this case.

Jurisdiction and Venue

24. The Court has personal jurisdiction over Defendants based on both general and specific jurisdiction.

25. During all times relevant to this lawsuit, Defendants have done and continue to do business in the State of Texas and their principal offices are located in the State of Texas.

26. The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiff bases his claims on federal law, namely 29 U.S.C. §§ 201-219.

27. Venue is proper in the United States District Court for the Western District of Texas because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district. Plaintiff

was and continues to be employed by Defendants in this District, and at all relevant times, Defendants transacted business in this District.

28.  Venue is proper in the Midland Division of the United States District Court for the Western District of Texas because, a substantial part of the events giving rise to Plaintiff's claims occurred in this Division and Defendants maintained or maintains business operations within the Midland Division.

## Factual Background

29.  Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

30.  Throughout his tenure with Defendants, Plaintiff has primarily provided wireline oilfield services and related work as an employee of Defendants. Plaintiff's primary work was and continues to be manual labor in connection with oilfield work, and while he has performed work throughout the State of Texas, he has primarily performed work in and around Midland County, Texas. At all times relevant, Defendants provided Plaintiff with housing, typically at a hotel or "man-camp", depending on the specific location of his work in a given week.

31. Plaintiff's primary job duties include(d) driving, or riding in, the company provided pick-up trucks; preparing guns that shoot holes in to the Earth for hydraulic fracturing operations; cleaning equipment; rebuilding tools and equipment for wireline operations; rigging up and rigging down pressure control equipment for wireline operations; keeping count of explosives on the jobsite; reporting any Department-of-Transportations ("DOT") issues to the DOT manager; driving explosives to the jobsite when needed; and communicating with his supervisor and Defendants' upper management.

32. Plaintiff's job duties are and were routine and primarily consist(ed) of manual labor. He has relied on his hands, physical skills, and energy to perform manual and routine labor in the oilfield on a daily basis.

33. Plaintiff's duties have not included managerial responsibilities nor the exercise of independent discretion or judgment on matters of significance related to the business. Further, Plaintiff's duties have not concerned work directly related to the management or general business operations of Defendants, nor of the businesses of Defendants' customers.

34. Plaintiff has not and does not have the authority to hire or fire other employees, and he is not and has not been responsible for making hiring or firing recommendations.

35. Plaintiff has not regularly supervised two or more employees. Rather, Plaintiff has worked in two or three-man teams on a daily basis, comprised of an engineer as well as one or two operators, with him being one of the operators.

36. Plaintiff's original offer letter had Ranger's name written on it and his second offer letter had Mallard's name written on it; however, Plaintiff's W-2s and hiring packet listed Ranger as his employer, Plaintiff was provided Ranger's Employee Handbook, and Plaintiff's benefit plan is through Ranger.

37. Plaintiff has worked as a wireline operator for Defendants from on or about April 20, 2018 to on or about November 30, 2019, and then from on or about December 30, 2019 to present. He was paid a salary up until approximately October 10, 2020, when he was switched to hourly. Defendants classified Plaintiff's position prior to October 10, 2020 as exempt from the overtime requirements of the FLSA and did not pay him overtime for hours worked in excess of 40 in a given seven-

day workweek. In addition, during his first term of employment, Plaintiff received a 1% service ticket bonus tied to successfully completing servicing revenue. Beginning in December of 2019, when Plaintiff was re-hired, he received a 2.0% service ticket bonus tied to successfully completing servicing revenue. Lastly, according to his offer of employment, Plaintiff was to receive paid-time-off, despite his being a salaried employee.

38. At all times relevant to this lawsuit, Plaintiff worked long hours. Specifically, Defendants regularly scheduled Plaintiff for twelve-hour or fourteen-hour shifts; however, he typically worked 16 to 19, or more, hours each workday. During the relevant times, Plaintiff's typical workday started at the company provided housing where his crew assembled, loaded tools, equipment and supplies, if needed, then together proceeded to drive to the jobsite, where they began their scheduled 12 (or 14)-hour shift. In addition, on days Plaintiff had to cover for another employee, he may work 24 to 48 hours straight.

39. Defendants did not make, keep or require an accurate record of hours worked by Plaintiff on a daily basis during the relevant time period.

40. As such, Plaintiff was a non-exempt employee under the FLSA during his first term of employment and also his second term of employment through October 10, 2020, and when he worked more than 40-hours in a seven-day workweek, he was entitled to be paid overtime premium compensation at one and one-half times his respective regular rate of pay for each and every hour worked over 40. 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.325. Further, Plaintiff's bonuses should be factored into his regular rate when determining Plaintiff's overtime rate.

## FLSA Claims

41. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

42. All conditions precedent to this suit, if any, have been fulfilled.

43. During the relevant times to this lawsuit, Defendants were joint employers within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d); were eligible and covered employers under the FLSA. 29 U.S.C. § 203(d); and were enterprises engaged in commerce under the FLSA. 29 U.S.C. § 203(s)(1)(A).

44. Plaintiff was and continues to be an employee of Defendants. 29 U.S.C. § 203(e).

45. Defendants paid Plaintiff a salary through October 10, 2020.

46. In addition, during his first term of employment, Plaintiff received a 1% service ticket bonus tied to successfully completing servicing revenue. Beginning in December of 2019, when Plaintiff was re-hired, he received a 2.0% service ticket bonus tied to successfully completing servicing revenue. Lastly, according to his offer of employment, Plaintiff was to receive paid-time-off, despite his being a salaried employee.

47. Plaintiff regularly worked in excess of 40-hours per seven-day workweek as an employee of Defendants during the time period relevant to this lawsuit.

48. Under the FLSA, employers must pay their employees overtime wages if employees work more than forty hours a week. However, the FLSA overtime provision does not apply with respect to any employee employed in a bona fide executive, administrative, or professional capacity. *Pye v. Oil States Energy Services, LLC*, 233 F. Supp. 3d 541, 556–57 (W.D. Tex. 2017). Title 29, Code of Federal

Regulations, § 541.200(a) provides a three-part test for determining the applicability of the exemption from overtime pay requirements for bona fide administrative employees, stating, in relevant part: The term "employee employed in a bona fide administrative capacity" ... shall mean any employee:

>   (1) Compensated on a salary or fee basis at a rate of not less than $684 per week ... exclusive of board, lodging or other facilities;
>
>   (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
>   (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

As noted, Defendants bear the burden to show Plaintiff was exempt under the administrative exemption. *Id.* at 557 (W.D. Tex. 2017).

49. The FLSA's implementing regulations define a "bona fide executive" employee as "any employee who (1) is paid at least $684 per week, (2) whose 'primary duty is management,' (3) who 'customarily and regularly directs' at least two other employees, and (4) who has hiring and firing authority, or whose suggestions about promotion and

termination are 'given particular weight.' *Pruneda v. Xtreme Drilling & Coil Services, Inc.*, 2017 WL 3023214, at *4 (W.D. Tex. June 20, 2017).

50. During the relevant times:

   a. Plaintiff's job duties were routine and primarily consisted of manual labor;

   b. he relied on his hands, physical skills, and energy to perform manual and routine labor in the oilfield on a daily basis;

   c. Plaintiff's duties did not include managerial responsibilities nor the exercise of independent discretion or judgment;

   d. Plaintiff's duties did not concern work directly related to the management or general business operations of Defendants' business or of the businesses of Defendants' customers; and

   e. Plaintiff did not have the authority to hire or fire other employees, and was not responsible for making hiring or firing recommendations.

51. Plaintiff did not regularly supervise two or more employees. Rather, Plaintiff typically worked in two or three-man teams on a daily basis, which included one engineer as well as one or two operators, with Plaintiff being one of the operators.

52. Defendants were required to pay Plaintiff one and one-half times his regular rate of pay for all hours worked over 40 in a seven-day workweek. 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.325.

53. Defendants failed to pay Plaintiff overtime compensation at one and one-half times his regular rate of pay for all hours worked over 40 in each and every seven-day workweek during the time period relevant to this lawsuit.

54. Plaintiff's regular rate of pay must be calculated by considering his hourly rate, even though he was paid on a salary basis. 29 C.F.R. §§ 778.108-109, 778.113-114, 778.325.

55. During the relevant time period, Defendants did not make and keep an accurate record of all hours worked by Plaintiff, as required by the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2.

56. Defendants' violations of the FLSA were willful within the meaning of 29 U.S.C. § 255(a). For example, Defendants are sophisticated parties and employers, and therefore knew (or should have known) their policies were in violation of the FLSA. The decision and practice by Defendants to not pay Plaintiff overtime was neither reasonable nor in good faith. Accordingly, Plaintiff is entitled to

overtime wages for all hours worked pursuant to the FLSA in an amount equal to one and one-half times his regular rate of pay, plus liquidated damages, attorney's fees, costs, post judgment interest and all other damages available for Defendants' willful failure to pay overtime wages owed.

57. Plaintiff specifically pleads recovery for the time period of three years preceding the date of filing of this lawsuit.

## Jury Demand

58. Plaintiff demands a jury trial on all matters properly triable thereto.

## Damages and Prayer

59. Plaintiff asks that the Court award him a judgment against Defendants, jointly and severally, for the following:

    a. All damages allowed by the FLSA, including back overtime wages;

    b. Liquidated damages in an amount equal to back FLSA mandated wages;

    c. Legal fees;

    d. Costs;

    e. Post-judgment interest; and

    f.    All other relief to which Plaintiff is entitled.

Dated November 25, 2020

        Respectfully submitted,

        /s/ *Alyssa S. Turner*
        John M. Rogers    17177250
        Alyssa S. Turner    24093784

        ROGERS, LLP
        409 West 4th Street, Ste. 102
        Post Office Box 2530
        Weatherford, TX 76086
        817.341.9300
        817.341.9301 fax
        john.rogers@rogersllp.com
        alyssa.turner@rogersllp.com

        Attorneys for Plaintiff